**KOLLER LAW LLC**
David M. Koller, Esquire (90119)                                      *Attorney for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
(T) 215-545-8917
(F) 215-575-0826

### IN THE UNITED STATES DISTRICT COURT
### THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOROTHY COLZIE** <br> 1709 Graham Lane, <br> Elkins Park, PA 19027 <br> *Plaintiff*, <br><br> v. <br><br> **POLONIA BANK** <br> 3993 Huntingdon Pike <br> Huntingdon Valley, Pennsylvania 19006 <br> *Defendant*. | Civil No. |

### CIVIL ACTION COMPLAINT

Plaintiff, Dorothy Colzie (hereinafter "Plaintiff), by and through undersigned counsel, hereby files this complaint in her action against Defendant Polonia Bank (hereinafter "Defendant"). Plaintiff is alleging that her rights, pursuant to the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq.*, have been violated and avers as follows:

### PARTIES

1. Plaintiff, Dorothy Colzie, is a resident of Philadelphia, Pennsylvania, residing at 1709 Graham Lane, Elkins Park, PA 19027.

2. Defendant Polonia Bank is a financial institution with its Executive Offices located at the above captioned address.

3. At all times hereto, Defendant employed managers, supervisors, agents and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

4. At all times hereto, Defendant employed managers, supervisors, agents and employees who acted directly or indirectly in the interest of the employer. In so acting these individuals engaged in the pattern and practice of discriminatory treatment which forms the basis of the Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

5. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

6. The Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts within this state and judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

7. This Court may exercise original subject-matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

8. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§1391(b)(1) and 1391(b)(2) because Defendant is located in and/ or regularly conducts business in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## FACTS

9. Defendant is a Financial Institution that provides services including, but not limited to banking accounts, mortgages, and loans.

10. On or about April 2014, Defendant hired Plaintiff in a part time capacity to be a staff accountant. Plaintiff was moved into a full time position in August 2014.

11. Plaintiff's responsibilities included general ledger entries, daily and monthly reconcilements and maintaining branch logs for tellers and supervisors.

12. Plaintiff worked Monday through Friday, with hours from 8:30am-5:00pm.

13. Plaintiff routinely worked above and beyond the call of duty by working five to six additional hours each week. She would typically arrive at 7:30am instead of 8:30am, and she would take work home with her.

14. Plaintiff was not compensated for working extra hours.

15. Plaintiff worked extra hours and took extra work home from December 2014 until about July 2015.

16. In or about July 2015, Plaintiff noticed a change in her supervisor, Sharon's (LNU) behavior when Plaintiff decided to stop working extra hours without compensation.

17. Plaintiff's supervisor removed Plaintiff's back-up help, an employee named Christie (LNU), and the supervisor started to scrutinize Plaintiff's work. This was a change in treatment compared to earlier when Plaintiff worked extra hours and took work home.

18. Plaintiff complained to Elaine in Human Resources multiple times. Each time Elaine acknowledged the problem, claimed that that was just "the way she (Sharon) is." Human Resources said that they would talk to Sharon, but that they could not promise anything.

19. After Plaintiff made the complaints, the supervisor Sharon retaliated by scrutinizing Plaintiff's work even more.

20. Plaintiff's supervisor started slamming her door closed if Plaintiff was outside her door talking to co-workers. The supervisor did not slam her door when other people engaged in the same behavior.

21. Plaintiff's co-workers distanced themselves from Plaintiff to avoid a negative association with Plaintiff and getting into trouble with the supervisor. Plaintiff felt isolated in a hostile environment.

22. Plaintiff was warned by co-workers that "this is how it starts" and (Plaintiff) may end up losing her job.

23. The work environment became very uncomfortable, tense, and hostile.

### PLAINTIFF BECAME SUDDENLY ILL WHILE AT WORK AND WAS TAKEN BY AMBULANCEE TO THE EMERGENCY ROOM

24. On or about Wednesday, September 23, 2015, Plaintiff went to work as usual, but while at work, Plaintiff began to feel very sick with symptoms of light headedness, nausea, dizziness, and chills.

25. Plaintiff was assisted by the receptionist, Lynn (LNU), who also enlisted the aid of Elaine (LNU) from Human Resources.

26. An ambulance was called and Plaintiff was taken to the emergency room of Abington Hospital where she was evaluated and treated. Plaintiff was diagnosed with Vertigo for which she received multiple prescriptions. Plaintiff was instructed to stay home from work for a couple days and she was referred to her primary care physician for follow-up with a recommendation that she have a neurological exam. Plaintiff was discharged at 4:30pm that day.

4

27. Plaintiff remained home sick on Thursday, but returned to work on Friday. However, Plaintiff was still not feeling well and realized that returning sooner than was recommended by the emergency room doctors was a mistake.

28. Plaintiff had an appointment to see her primary care doctor on Tuesday, September 29, 2016, at which time Plaintiff was put on bed rest for the rest of the week.

29. Plaintiff telephoned and also sent a text message to the treasurer, Paul Rakowski, to inform him that she would not be at work for the rest of the week, all in accordance with the Defendant's leave policies.

30. He responded by telling Plaintiff that upon her return she should be sure to have a note from her doctor for application for the leave. He did not inquire about her welfare nor about her workload.

31. Plaintiff was suffering from her illness and she was experiencing insomnia. Her medication made her feel disoriented during the day.

32. Plaintiff returned to work on Monday, October 5, 2015 and brought in her doctor's note excusing her absence, as requested and required by Mr. Rakowski for approval of her leave.

33. If staff are unable to work, the expected procedure for coverage is that a designated co-worker will ensure that work is completed in a timely manner.

34. Plaintiff presumed that normal procedures were followed and that her work assignments were completed by a co-worker during her absence since she had dutifully informed Mr. Rakowski of the doctor's orders for her to be on bed rest for the duration of one week.

## **DEFENDANT THEN RETALIATED AGAINST THE PLAINTIFF**

35. Upon her return, Plaintiff noted that critical aspects of her work had been managed during her absence. This led her to believe that all aspects of her work had been handled, per procedures, during her absence.

36. Interest checks are mailed once per month and should have been mailed during the week of Plaintiff's absence. This is a task that Plaintiff usually manages, but since she was out sick, a co-worker should have assumed this responsibility, per procedure.

37. Phone calls from clients who were inquiring about the checks were made to Defendant during the week of Plaintiff's absence.

38. Elaine (LNU) was made aware of the phone calls about the checks, but she assumed the checks had been mailed and that they had just not arrived yet. Elaine dismissed the inquiries.

39. Plaintiff went to her supervisor, Sharon (LNU) to ask about the checks. The supervisor asked why Plaintiff did not mail the checks.

40. Sharon reviewed work with Plaintiff and told her that she had two weeks of work to do and one week to do it and that she better get it done, "or else."

41. Plaintiff complained to Elaine in Human Resources. Elaine said that Plaintiff had to work extra hours, come in early, leave late, work through lunch to get it done.

42. The supervisor's supervisor was responsible for making sure a co-worker of Plaintiff managed the task of mailing the checks. This did not happen.

43. On or about October 7, 2015, Plaintiff was brought into the office and was terminated for negligence because she did not alert anyone that the checks had not been mailed. This occurred even though Plaintiff was not present to either conduct the mailing herself or

discover that procedures had not been followed and that a co-worker had not mailed them on Plaintiff's behalf.

44. Present at the meeting to conduct the termination were Paul Rakowski, Sharon (LNU) and Elaine (LNU). The asserted reason for termination was that Plaintiff willfully neglected to inform anyone that interest checks had not been mailed. Defendant also made remarks about Plaintiff no longer coming to work early and no longer taking extra work home.

45. Plaintiff alleges that the reasons given for her termination were pre-textual and that the real reason that Plaintiff was terminated was because she utilized leave under Defendant's FMLA policy.

46. Defendant interfered with Plaintiff's rights under the FMLA in failing to approve her leave under its policies, despite her being eligible for the benefit.

## COUNT I – DISCRIMINATION/RETALIATION
## VIOLATION of the FAMILY MEDICAL LEAVE ACT, FMLA 29 USCA §2615(b) *et. seq.*

47. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

48. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C) Plaintiff was eligible for Family and Medical Leave Act Leave.

49. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for his own serous medical issue.

50. Plaintiff gave Defendant sufficient information to allow it to understand that he needed leave for FMLA-qualifying reasons.

51. Defendant approved Plaintiff for leave under the FMLA.

52. Nonetheless, Defendant terminated Plaintiff shortly after he returned from FMLA leave.

53. Defendant's motivation for terminating Plaintiff was connected causally to Plaintiff's

7

application of FMLA leave.

54. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

55. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

56. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

57. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## COUNT II - INTERFERENCE
## VIOLATION of the FAMILY MEDICAL LEAVE ACT, FMLA 29 USCA §2615(b) *et. seq.*

58. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

59. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

60. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA Leave in order to care for her own serious medical condition.

61. Defendant did not approve Plaintiff's request for leave under the FMLA.

62. Defendant acted in bad faith by interfering with Plaintiff's approved FMLA leave.

63. Defendant did not provide Plaintiff with the second and third opinion medical examination reports.

64. Defendant did not provide Plaintiff with travel reimbursements to the second and third opinion medical examinations.

65. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

66. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1)

67. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish,

9

humiliation, loss of fringe benefits, disruption of her personal life and loss of enjoyment of the ordinary pleasures of life.

68. Plaintiff demands judgment in her favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

69. Plaintiff further demands judgment in her favor against Defendants for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

### JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

### CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

Respectfully Submitted,

KOLLER LAW, LLC

By: *David M. Koller*
     **DAVID KOLLER**

Date: 10/10/17

David M. Koller, Esquire
Attorney ID No. 90119
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
*Counsel for Plaintiff*